UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-453-GWU

DEBRA ROBBINS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Debra Robbins, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of chronic pain syndrome, a history of musculoligamentous strain, and an adjustment disorder with mixed anxiety and depressed mood. (Tr. 383-4). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Robbins retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 386-9). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 47, high school-equivalent education and work history as a cashier could perform any jobs if she were capable of "light" level exertion, and also had the following non-exertional restrictions. (Tr. 695, 707). She: (1) could not climb; (2) could occasionally bend, crouch, or crawl; (3) needed to avoid hazards; and (4) had

a "limited but satisfactory" ability to follow work rules, relate to coworkers, deal with the public, use judgment, interact with supervisors, deal with work stresses, function independently, maintain attention and concentration, understand, remember, and carry out detailed instructions, relate predictably in social situations, and maintain personal appearance. (Tr. 707-8). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 708).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the claimant's condition. There is an additional issue in that the plaintiff had filed a prior application for SSI in 2001 which had resulted in the award by a previous ALJ of a closed period of disability from October 23, 2000 to October 7, 2002. (Tr. 21-2, 378). For the period after October 7, 2002 through the date of the decision, August 20, 2003, the ALJ had determined that Mrs. Robbins was "not disabled." (Tr. 25). The ALJ in the present case declined to reopen the prior applications and properly noted that she was bound by the findings of the previous ALJ unless there was evidence of improvement or deterioration in the claimant's condition. Drummond v. Commissioner of Social Security, 126 F.3d 837, 842 (6th Cir. 1997); Acquiescence Ruling 98-4(6). While the current ALJ specifically found that there had not been a deterioration in the plaintiff's condition, the ALJ did not provide a sufficient rationale

for finding an improvement in the plaintiff's ability to sit, stand, and walk.  Therefore, a remand will be required.

The 2003 ALJ decision had limited Mrs. Robbins to "light" level exertion with a need to change positions from sitting, standing, and walking every 30 to 60 minutes, precluded her from work requiring more than a moderate amount of bending and stooping, and having a "fair to good" ability to make most occupational, performance, and personal/social adjustments, except for her ability to understand, remember, and carry out complex instructions.  (Tr. 22).  The residual functional capacity finding made by the ALJ in the present case contains no need to alternate positions, but the only evidence from examining sources on this subject consists of reports by Dr. Stephen Nutter and by Dr. Robert Hoskins.  Dr. Nutter examined the plaintiff on November 10, 2005 and noted a number of musculoskeletal abnormalities, including a limping gait, pain and tenderness in the cervical spine, forward flexion of the lumbar spine limited to 25 degrees with tenderness and pain, sensory abnormalities in the right tibia and foot, difficulty performing tandem gait and squatting, and reduced strength in the right foot.  (Tr. 675-6).  Dr. Nutter's functional capacity form limited the plaintiff to sitting, standing, and walking no more than four hours each in an eight hour day and, although the notation is illegible, also indicated that the plaintiff would have to have rests at intervals.  (Tr. 678).  Dr. Hoskins examined the plaintiff on March 7, 2006 and reviewed some objective studies

including x-rays and MRI reports as well as office notes from one of the plaintiff's treating family physicians, Dr. Chung. (Tr. 682). Dr. Hoskins also found a greatly reduced range of motion of the lumbar spine, along with positive straight leg raising and muscle spasms. (Tr. 684). He limited the plaintiff to lifting no greater than 20 pounds and no continuous sitting of more than two hours with a need to have a five to ten minute break to stand and walk around. (Tr. 686). He also limited Mrs. Robbins to no continuous standing or walking of more than 45 minutes, after which she would need to sit for five to ten minutes. (Id.).

While the ALJ noted that she had no treating source opinion regarding physical restrictions and stated that she gave appropriate weight to Dr. Nutter and Dr. Hoskins, she rejected their conclusions based on what she felt were internal inconsistencies. (Tr. 385-6). In any case, whatever may be said about the conclusions of these physicians, who are uncontradicted by any examining or treating source, the ALJ stated that she would defer to the August 20, 2003 residual functional capacity assessment from the prior ALJ. (Tr. 386). Since the hypothetical question in the present case did not contain the restrictions on sitting, standing, and walking in the August 20, 2003 final decision, it is clearly inconsistent and not supported by substantial evidence. A remand will be required in order to address these discrepancies.

The plaintiff alleges error in the ALJ's determination of the hypothetical mental factors, as well. The only examining mental health source to give an opinion in connection with the current application was Dr. Vincent Dummer, who examined Mrs. Robbins on November 25, 2005, and who reviewed some previous records from Dr. Chung. (Tr. 665).[1] The plaintiff indicated that one of her daughters had been murdered in October, 2004, and displayed some signs of depression, including motor retardation and emotional expressions of sadness and crying. (Tr. 666-7). Dr. Dummer administered IQ testing, producing a full scale score of 72, which he noted corresponded with the borderline classification of intellectual functioning. (Tr. 668). Achievement testing showed the plaintiff's ability as equivalent to fourth grade reading, third grade spelling, and sixth grade arithmetic. (Id.). He diagnosed an adjustment disorder with mixed emotions and assigned a current Global Assessment of Functioning (GAF) score of 60. (Tr. 669). A GAF of 60 represents "moderate symptoms or moderate difficulty in social, occupational, or school functioning." Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision) (DSM-IV-TR), p. 34. Dr. Dummer commented in his narrative report that Mrs. Robbins would be able to understand, retain, and follow simple instructions and

[1]Dr. Chung had provided Mrs. Robbins with the anti-depressant medication Wellbutrin, initially to help her stop smoking, but later, in part, to address depressive issues. (Tr. 577-81). Dr. Chung switched his patient to another anti-depressant, Lexapro, in January, 2005. (Tr. 577).

sustain attention to perform simple, repetitive tasks. (Tr. 669). She would have a "fair" ability to get along with others at work but he expected that she would have some difficulties tolerating the stress and pressures associated with day-to-day work activity. (Id.). However, in a mental medical assessment form attached to his report, Dr. Dummer checked boxes indicating that the plaintiff would have a "seriously limited but not precluded" ability to understand, remember, and carry out complex job instructions, behave in an emotionally stable manner, and demonstrate reliability. (Tr. 670-1). The ALJ stated that she would give only negligible weight to Dr. Dummer's conclusions, citing the "mild" GAF scores as well as the lack of any functional impairment identified in treatment notes from the Comprehensive Care Center (CCC). (Tr. 386). The ALJ also cited the opinions of state agency reviewing psychologists, who found only moderate limitations in the plaintiff's ability to maintain attention and concentration for extended periods and interact appropriately with the general public. (Tr. 607-9, 611-15).

The plaintiff finds fault with the ALJ's conclusions in a number of respects. First, she asserts that the use of the GAF score to discount the specific restrictions listed by the examiner was improper.[2] While the ALJ described a GAF of 60 as

---

[2]The plaintiff cites the unpublished case of Martin v. Commissioner of Social Security, 51 Fed. Appx. 191 (6th Cir. 2004) in which it was held that it was improper to use a GAF score alone to discredit the conclusions of the plaintiff's treating physicians. Id. at 200. The plaintiff concedes that Dr. Dummer was not a treating source.

"mild," it corresponds with either "moderate" symptoms or impairment of functioning, as described above.  Moreover, as a description of the patient's overall level of functioning, it does not necessarily preclude more serious limitations in certain specified areas, as specifically found by Dr. Dummer.  The ALJ's citation to CCC treatment notes, which included GAF scores of 65 (e.g., Tr. 553), equivalent to "mild" symptoms or functional limitations per the DSM-IV-TR, would be persuasive contrary evidence, but as the plaintiff points out, this score was given in March, 2004, prior to the murder of the plaintiff's daughter (Tr. 543-4, 579).  The opinions of the state agency psychological reviewers were also given prior to this event.  In view of the fact that Dr. Dummer was the only examining source to give opinions regarding the plaintiff's specific functioning, the court concludes that evidence from a medical advisor should have been obtained if his opinion was to be rejected, since the prior evidence of the plaintiff's mental status may no longer have been entirely reliable.

The plaintiff additionally argues that her borderline intellectual functioning, as assessed by Dr. Dummer, should have been found to be a "severe impairment."  In light of the holding in the unpublished case of Colwell v. Chater, 98 F.3d 1341 (6th Cir. 1996) that IQ scores below 80 are not necessarily "severe" impairments, this court is disinclined to accept the plaintiff's argument.  However, the plaintiff's scores on achievement testing were significantly lower than the high school equivalency education which was posited in the hypothetical question.  It is well established that

the actual grade level completed by a claimant should not be used in a hypothetical question if there is contradictory evidence from achievement testing. Skinner v. Secretary of Health and Human Services, 902 F.2d 447, 450-1 (6th Cir. 1990).

The decision will be remanded for further consideration.

This the 12th day of October, 2007.

**Signed By:**

***G. Wix Unthank***

**United States Senior Judge**